UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTY DORR,<br><br>    Plaintiff,<br><br>      v.<br><br>WOODLANDS SENIOR LIVING OF BREWER, LLC,<br><br>    Defendant. | Civil Action No. |

**COMPLAINT**
**JURY TRIAL REQUESTED**
<u>**INJUNCTIVE RELIEF REQUESTED**</u>

NOW COMES the Plaintiff, Christy Dorr ("Plaintiff" or "Dorr"), by and through undersigned counsel, and complains against the Defendant, Woodlands Senior Living of Brewer, LLC, (Defendant or "Woodlands"), as follows:

<u>JURISDICTION AND PARTIES</u>

1. This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.* the Maine Family Medical Leave Requirement Act ("MFMLR"), 26 M.R.S. §§ 844 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act ("Rehab Act"), 42 U.S.C. §§ 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*

2. Dorr is a United States citizen residing in Bradley, Maine.

3. Defendant is a Maine corporation that among other things operates an assisted living and memory care facility for seniors in Brewer, Maine.

4. Woodlands had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

5. Woodlands operate a "program or activity receiving federal financial assistance" within the meaning of the Rehab Act.

6. This Court has subject matter jurisdiction over Dorr's federal and state claims pursuant to 28 U.S.C. §§ 1331and 1367.

7. On or about August 22, 2014, Dorr filed a timely Charge of Discrimination against Woodlands alleging unlawful sex (pregnancy) and disability discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

8. On or about February 25, 2015, the MHRC issued Notices of Right to Sue with respect to Dorr's MHRA claims.

9. On or about February 26, 2015, the EEOC issued a Notice of Right to Sue with respect to Dorr's Title VII and ADA claims.

10. Dorr has exhausted her administrative remedies with respect to all claims set forth in this Complaint.

## JURY TRIAL DEMAND

11. Pursuant to Federal Rule of Civil Procedure 38(b), Dorr hereby demands a jury trial on all issues triable of right by jury.

## FACTUAL ALLEGATIONS

12. Dorr was employed by Woodlands from approximately 2006 to 2008.

13. Dorr was rehired on June 19, 2013 and worked at the Brewer location as a Certified Residential Medication Aide (CRMA) and PCA/Nursing Assistant until she was wrongfully terminated on June 27, 2014.

14. The Brewer location consists of a 72-bed assisted living facility and a 32-bed memory care facility.

15. Dorr's job performance was satisfactory.

16. Dorr was engaged with her job and her employer considered her a role model for others.

17. Dorr has asthma which constitutes a "disability" under the MHRA, ADA, and Rehab Act and a "serious health condition" under the FMLA and MFMLR.

18. Dorr also has anxiety/depression which constitutes a "disability" under the MHRC, ADA and Rehab Act and a "serious health condition" under the FMLA and MFMLR.

19. Dorr's asthma and anxiety/depression also constitute chronic conditions as defined by the FMLA and MFMLR insofar as they have each required periodic visits for treatment by a health care provider, have continued over an extended period of time, and cause episodic periods of incapacity.

20. Dorr was pregnant in June 2014 at the time of her termination.

21. Earlier that year, Dorr missed time from work due to a miscarriage.

22. Dorr's boyfriend, who is the father of her baby, also works for Woodlands.

23. On Thursday, June 26, 2014, Dorr was assigned to work as a CRMA on the medication ("med") cart on the 6:30 AM to 3:00 PM shift on the Assisted Living side of the facility.

24. Dorr arrived at work and got the med cart ready.

25. Dorr's co-worker, Courtney Mihalik, approached and told Dorr that her boyfriend was cheating on her and had been for some time.

26. Dorr became very upset and felt like she was having a panic attack.

27. Dorr did not have her inhaler with her and was concerned that she was going to need it because she was so upset and was having trouble breathing.

28. There were no supervisors present at work at the time.

29. Dorr did not contact the on-call supervisor because she was in deep distress, having trouble breathing, and did not think about it.

30. In Dorr's experience, the on-call supervisor often fails to answer and fails to return calls.

31. There was plenty of staff on hand to pass meds and care for residents.

32. Dorr did not think that she could safely and effectively care for residents if she remained at work.

33. Dorr was afraid that if she did not calm down and have access to her inhaler that she would risk another miscarriage.

34. Before leaving work, Dorr explained to Courtney Mihalik that she needed to leave and gave Mihalik her keys and asked Mihalik to give the keys to Kelly Perry so that Kelly, a qualified CRMA, could pass meds to the residents and to explain that Dorr had needed to leave.

35. After Dorr left, the staff had no issues providing appropriate care to the residents.

36. Dorr required emergency leave from work as a reasonable accommodation for her disabilities and was entitled to this leave under the MHRA, ADA, Rehab Act, FMLA, and MFMLR.

37. Dorr did not have access to a phone because she could not afford to pay her cell phone bill that month.

38. Dorr had previously informed Woodlands that her phone was disconnected because she bought food for her son instead of paying for her phone. Dorr told Woodlands that she could be reached by calling her boyfriend's phone.

39. A friend stopped by Dorr's home that day to see if she was okay.

40. Dorr used her friend's phone to call Woodlands at about 9 or 9:30 AM but she could not reach a manager. Dorr spoke to Kelly Perry who told Dorr that all of the managers were at a meeting at the Coach House. Dorr had no phone of her own and could not leave a call back number.

41. Dorr returned to work that afternoon and spoke to Program Coordinator Chelsea Huff and Executive Director Benjamin Smith.

42. Dorr told Huff and Smith what happened that morning and why she left, including her symptoms, the fact that she was pregnant and was concerned about a miscarriage and that she felt that it was unsafe for her and the residents for her to remain at work.

43. Dorr told Huff and Smith that she was 8 weeks pregnant. Smith responded, "Oh you are?" Dorr said, "Yes, and I started having a panic attack and was so upset that I left because I didn't want to lose this baby."

44. Dorr's explanation for her sudden emergency departure from work earlier in the day on June 26, 2014 was a request for reasonable accommodation under the ADA, MHRA and Rehab Act.

45. Dorr's explanation was also a request for medical leave under the FMLA and MFMLR.

46. Huff knew that Dorr was pregnant before the June 26, 2014 meeting. Dorr disclosed her pregnancy to Huff in response to an invitation from Huff to go out for drinks one night. Dorr cited her pregnancy as the reason she declined Huff's offer.

47. Huff and Smith told Dorr that they would think about it and let her know what was going to happen.

48. On the night of June 26, 2014, Dorr went back to Woodlands to talk to a friend. Dorr was told that her name was crossed off the schedule which indicated to Dorr that her employment was or was going to be terminated.

49. On June 27, 2014, Dorr went to Woodlands and met with Smith in an office at about 4:40 PM.

50. Dorr asked Smith if she was fired and he said yes.

51. Dorr asked why she was being terminated and not others who left work without notifying a supervisor or manager. Smith told Dorr that other situations were different.

52. Smith did not give Dorr a specific reason for her termination.

53. Smith did not give Dorr a termination notice.

54. Dorr tried talking to Smith further about the termination but he ended the meeting and stated that he wanted to get back to an employee BBQ.

55. Dorr did not seek out upsetting news at work.

56. Dorr received upsetting news and reacted normally. Many if not most people would be very upset to learn that his or her significant other was being unfaithful.

57. Upon information and belief, the co-worker who delivered upsetting news to Dorr at work was not disciplined nor was Dorr's cheating boyfriend disciplined.

58.     There is a termination notice dated June 26, 2014 and signed by Executive Director Smith contained in Dorr's employee file.

59.     The termination notice confirms that Dorr told the overnight staff person that she was leaving and that she turned over the keys to the med cart.

60.     The termination notice intentionally and falsely omitted any mention of Dorr's request for reasonable accommodation and for protected leave.

61.     There is an Employee Absence/Tardiness Reporting Form dated June 27, 2014 and signed by Cindy Hallobaugh contained in Dorr's employee file.

62.     The form indicates falsely that Dorr "just walked out at 7:00 and never said anything to staff."

63.     Woodlands replaced Dorr with an employee R.K. who was not known to Woodlands to be pregnant or disabled.

64.     Dorr did not expect to be terminated because others like her that were not pregnant or disabled have not been terminated for similar occurrences.

65.     Upon information and belief, Chelsea Elston, PSS, was not terminated even though she left work and sat in her car while working an evening shift.

66.     Upon information and belief, Morgan (LNU) was not terminated even though she violated the rule against leaving the premises while on break. She left work on break during an overnight shift leaving only one person working on the floor and was not terminated.

67.     Employees have been "no show" for work and were not fired.

68.     Upon information and belief, Defendant has discriminated against other employees based on pregnancy and pregnancy-related conditions.

69. Defendants failed to accommodate Dorr's disabilities by providing her with emergency leave on June 26, 2014.

70. Woodlands terminated Dorr because of her pregnancy, her disabilities, and because of her request for reasonable accommodation and family medical leave.

71. Smith's conduct towards Dorr is evidence of discriminatory animus.

72. Woodlands denied Dorr a reasonable accommodation of its attendance policy which was medically necessary given Dorr's disabilities and pregnancy.

73. The temporal proximity between Dorr's use of protected medical leave and her termination is evidence of a causal connection.

74. The fact that Woodlands has lied by omission about the facts surrounding Dorr's termination is evidence of unlawful discrimination and retaliation.

75. Woodlands knowingly and willfully violated Dorr's rights under the ADA, MHRA, Rehab Act, FMLA and MFMLR.

76. Woodlands unlawfully discriminated against Dorr with malice or reckless indifference to her rights.

77. As a result of Woodlands' unlawful discrimination against Dorr, she has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation, and other pecuniary and non-pecuniary losses.

78. Dorr has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by Woodlands unless and until Woodlands is enjoined by this court.

## COUNT I: MHRA
## UNLAWFUL DISCRIMINATION

79. Paragraphs 1-78 are incorporated by reference.

80. Woodlands' conduct constitutes unlawful sex and disability discrimination against Dorr in violation of the MHRA.

## COUNT II: MHRA
## FAILURE TO ACCOMMODATE

81. Paragraphs 1-80 are incorporated by reference

82. Woodlands violated the MHRA by failing to provide Dorr with reasonable accommodations for her disability.

## COUNT III: MHRA
## UNLAWFUL RETALIATION

83. Paragraphs 1-82 are incorporated by reference.

84. Woodlands violated the MHRA by retaliating against Dorr because she required and used emergency medical leave as a reasonable accommodation for her disability.

## COUNT IV: ADA
## UNLAWFUL DISCRIMINATION

85. Paragraphs 1-84 are incorporated by reference.

86. Woodlands' conduct constitutes unlawful discrimination against Dorr in violation of the ADA.

## COUNT V: ADA
## FAILURE TO ACCOMMODATE

87. Paragraphs 1-86 are incorporated by reference.

88. Woodlands violated the ADA by failing to provide Dorr with reasonable accommodation for her disabilities.

### COUNT VI: ADA
### UNLAWFUL RETALIATION

89. Paragraphs 1-88 are incorporated by reference

90. Woodlands violated the ADA by retaliating against Dorr because she required and used emergency medical leave as a reasonable accommodation for her disability.

### COUNT VII: REHAB ACT
### UNLAWFUL DISCRIMINATION

91. Paragraphs 1-90 are incorporated by reference.

92. Woodlands' conduct constitutes unlawful discrimination against Dorr in violation of the Rehab Act.

### COUNT VIII: REHAB ACT
### FAILURE TO ACCOMMODATE

93. Paragraphs 1-92 are incorporated by reference.

94. Woodlands violated the Rehab Act by failing to provide Dorr with reasonable accommodation for her disability.

### COUNT IX: REHAB ACT
### UNLAWFUL RETALIATION

95. Paragraphs 1-94 are incorporated by reference.

96. Woodlands violated the Rehab Act by retaliating against Dorr because she required and used emergency medical leave as a reasonable accommodation for her disability.

### COUNT X: TITLE VII
### UNLAWFUL DISCRIMINATION

97. Paragraphs 1-96 are incorporated by reference.

98. Woodlands' conduct constitutes unlawful sex discrimination against Dorr in violation of Title VII.

### COUNT XI: FMLA

99. Paragraphs 1-98 are incorporated by reference.

100. Woodlands violated Dorr's prescriptive and proscriptive rights under the FMLA.

### COUNTY XII: MFMLR

101. Paragraphs 1-100 are incorporated by reference.

102. Woodlands violated Dorr's prescriptive and proscriptive rights under the MFMLR.

### PRAYER FOR RELIEF

Dorr respectfully requests that the Court grant the following relief:

(a) Declare the conduct engaged in by Woodlands to be in violation of her rights;

(b) Enjoin Woodlands, its agents, successors, employees, and those acting in concert with it from continuing to violate her rights;

(c) Order Woodlands to employ her in her former position and/or front pay for future lost earnings;

(d) Award equitable-relief for back pay, benefits and prejudgment interest;

(e) Award compensatory damages in an amount to be determined at trial;

(f) Award punitive damages in an amount to be determined at trial;

(g) Award liquidated damages in an amount to be determined at trial;

(h) Award nominal damages;

(i) Award attorney's fees, including legal expenses, and costs;

(j) Award prejudgment interest;

(k) Permanently enjoin Woodlands from engaging in any employment practices which discriminate on the basis of disability, pregnancy, or use of protected medical leave;

(l) Require Executive Director to mail a letter to all employees notifying them of the verdict against them and stating that Woodlands will not tolerate discrimination in the future;

(m) Require that Woodlands post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

(n) Require that Woodlands train all management level employees on the protections afforded by the MHRA, ADA, Rehab Act, Title VII, FMLA and MFMLR;

(o) Require that Woodlands place a document in Dorr's personnel file which explains that Woodlands unlawfully terminated her because of discrimination and retaliation; and

(p) Grant to Dorr such other and further relief as may be just and proper.

Dated: March 10, 2015

*/s/* Chad T. Hansen
chansen@maineemployeerights.com

*/s/* Peter Thompson
pthompson@maineemployeerights.com

Attorneys for the Plaintiff

MAINE EMPLOYEE RIGHTS GROUP
92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343