**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

|  |  |  |
|---|---|---|
| CHRISTY DORR, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-00092-GZS |
| WOODLANDS SENIOR LIVING OF BREWER, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN**
**COMPARATIVE EVIDENCE**

Defendant Woodlands Senior Living of Brewer, LLC ("Woodlands"), hereby moves to exclude certain comparative evidence that it anticipates Plaintiff will seek to introduce at trial. Specifically, Woodlands moves to exclude comparative evidence concerning employee discipline related to so-called "no-call, no-show" events. Plaintiff should be precluded from offering such comparative evidence because she was not terminated for a "no-call, no-show" event and was instead terminated for job abandonment after she left work in the middle of a shift without authorization. Because the relevant facts and circumstances of Plaintiff's job abandonment are different from those faced by employees disciplined for "no-call, no-show" events, Plaintiff is not similarly situated to such employees.

## I.    Background

During discovery, Plaintiff requested information regarding discipline that Woodlands had issued to employees for two different and distinct attendance infractions. First, Plaintiff requested information regarding each instance that an employee had been a "no-call, no-show"

11176364.2

for a scheduled shift.  *See Defendant's Answers to Plaintiff's First Set of Interrogatories*, Nos. 24, 25, & 26 (ECF No. 26-47 at PageID # 499-500).  Second, Plaintiff requested information regarding each instance that an employee had left work before the end of his or her scheduled shift.  *See id.* at Nos. 27, 28, & 29 (ECF No. 26-47 at PageID # 500-501).

Woodlands provided responses indicating the discipline that it had issued to the employees within each category.  For example, with respect to employees who had been a "no-call, no-show," Woodlands identified 149 employees who had been terminated as result of such an event and five (5) others who had received warnings.  *Id.*  With respect to the second category, Woodlands identified five (5) CRMAs who had left work in the middle of a shift without authorization, all of whom were terminated as a result.  *Id.*

However, Woodlands also interposed a relevance objection to the interrogatories concerning employees who were disciplined for "no-call, no-show" events.  *See id.* at Nos. 24, 25, & 26.  This was because the conduct that Plaintiff engaged in on the morning of June 26, 2014, was not a "no-call, no-show" event; rather, it was an instance of job abandonment that involved her departure from work without authorization after she had already started her shift. *See Letter dated August 13, 2015, to Attorney Hansen re: Request for Supplemental Discovery Answers* (attached hereto as **Exhibit A**).

In opposing Woodlands' motion for summary judgment, Plaintiff offered the discipline that Woodlands had issued to employees for "no-call, no-show" events as comparative evidence of Woodlands' treatment of other employees.  *See Defendant's Reply to Plaintiff's Additional Statement of Material Facts* at ¶¶ 158-169 (ECF No. 48 at PageID # 940-49).  Consistent with

11176364.2

its prior objection, Woodlands distinguished this comparative evidence on the grounds that Plaintiff's departure from work on June 26, 2016, was not a "no-call, no-show" event, but rather involved the second category of conduct about which Plaintiff had requested information in her interrogatories: employees who had left work in the middle of a shift without authorization.  *Id.*

Woodlands anticipates that, at trial, Plaintiff will again seek to introduce evidence of discipline by Woodlands for "no-call, no-show" events.  For the reasons below, Woodlands respectfully submits that Plaintiff should be precluded from so doing.

## II.     Plaintiff should be precluded from offering evidence of employees disciplined for "no-call, no-show" events because such employees are not similarly situated to Plaintiff.

It is the plaintiff's burden to show that proffered comparators are similarly situated. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16 (1st Cir. 1994) ("In a disparate treatment case, the plaintiff has the burden of showing that she was treated differently from similarly situated persons.").  A plaintiff relying on comparator evidence to demonstrate discrimination must show that "'others similarly situated to [her] in all relevant respects were treated differently by the employer.'"  *Garcia v. Bristol-Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir. 2008) (quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003)).  "The comparison cases 'need not be perfect replicas,' but they must 'closely resemble one another in respect to relevant facts and circumstances.'"  *Id.* (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)).

For example, in *Garcia*, the First Circuit held that a plaintiff's comparators were not similarly situated where the plaintiff pointed to a disparity between her own mid-year evaluation and an evaluation belonging to another co-worker.  *Garcia*, 535 F.3d at 31-32.  The plaintiff

3

11176364.2

argued that because she had received a mark of "meets expectations" while the co-worker had received a mark of "needs improvement," it was the co-worker, rather than the plaintiff, who should have been placed on a performance improvement plan. *Id.* However, the Court found that this comparison ignored the circumstances leading up to each employee's mid-year evaluation, which included the plaintiff's receipt of a far more negative year-end assessment from the previous year. *Id.* at 32. Consequently, at the time the plaintiff was put on a PIP, she and the co-worker "were by no means similarly situated," and the relatively good ratings that the plaintiff received in the mid-year review were simply "because she had been demonstrating improvement since being placed on the PIP." *Id.* For that reason, and others, the Court concluded that the plaintiff's comparators were "distinguishable in important respects from the facts and circumstances that [the plaintiff] faced." *Id.* at 33.

Similarly, in *Kosereis*, the First Circuit concluded that a plaintiff's proffered comparators were not similarly situated where the facts and circumstances surrounding the comparators' discipline were different from those surrounding the plaintiff's discipline. *Kosereis*, 331 F.3d at 214-15. For example, although the plaintiff pointed to other teachers who were not disciplined after returning late to work, there was no evidence showing that their late arrival was unauthorized or had caused them to miss classes as the plaintiff had done. *Id.* As a result, the plaintiff's comparators were "distinguishable in important respects from the facts and circumstances that Kosereis faced." *Id.* at 216.

Like the proffered comparators in *Garcia* and *Kosereis*, employees disciplined by Woodlands for "no-call, no-show" events faced different facts and circumstances from those faced by Plaintiff and therefore are not similarly situated to Plaintiff for purposes of

4

demonstrating that her termination for job abandonment was discriminatory.  As an initial matter, a "no-call, no-show" event – as the term clearly indicates – involves an employee that fails to show up to work and fails to give advance notice of his or her absence.  That conduct is not at issue in this case.  Rather, Plaintiff did show up to work and actually began working her shift, but then departed soon thereafter without authorization and without following Woodlands' notification procedures – a fact that Plaintiff admitted to during her deposition.  *See Deposition of Christy Dorr ("Dorr Depo. I")* at p. 39:6-16 (ECF No. 26-1 at PageID # 103).

The information that Woodlands provided relating to "no-call, no-show" events and job abandonment events – as well as the Plaintiff's specific interrogatories differentiating between each category of event – further highlights the dissimilarity of the facts and circumstances surrounding each type of event.  This information showed that 154 employees were disciplined for a "no-call, no-show" event (149 resulting in termination, and five (5) resulting in written warnings).  In contrast, Woodlands identified five (5) CRMAs who had left work without authorization, each of which had resulted in a termination.  Put simply, instances of job abandonment, where an employee leaves work in the middle of a shift without authorization, are far more rare than "no-call, no-show" events where an employee fails to show up to work without notice.  For purposes of comparative evidence, then, the relevant inquiry is how, if at all, Woodlands treated Plaintiff differently from employees who had engaged in this particular conduct – not employees whose conduct resulted in a "no-call, no-show" event.

Finally, the facts and circumstances under which Plaintiff departed work on June 26, 2014, implicated other policies and concerns, besides mere attendance, that are not similarly implicated by "no-call, no-show" events.  In this case, for example, Plaintiff had already

11176364.2

assumed control of the medication cart and performed a medication count with the outgoing CRMA. *Dorr Depo. I* at pp. 30:4-33:10, 40:16-41:5 (ECF No. 26-1 at PageID # 101-02, 103-04). Plaintiff knew that Woodlands maintained procedures for the storage of medications and the transfer of custody of medications. *Id.* at pp. 40:1-42:19 (ECF No. 26-1 at PageID # 103-04). Plaintiff also admitted that she violated these procedures when she left work and handed off the keys to her medication cart without first performing a medication count. *Id.* at pp. 41:8-42:19 (ECF No. 26-1 at PageID # 104). Plaintiff's violation of these medication procedures – which Benjamin Smith considered relevant to his decision to terminate Plaintiff's employment, *see Deposition of Benjamin Smith* at pp. 110:15-21 (ECF No. 26-21 at Page ID # 236) – is a very significant fact that distinguishes her situation from the circumstances faced by employees who simply fail to show up to work without notice. In short, just as the proffered comparator in *Garcia* was not similarly situated given the plaintiff's particular history of performance reviews, employees disciplined by Woodlands for "no-call, no-show" events are not similarly situated given the Plaintiff's particular policy violations, which included not just a violation of Woodlands' attendance policy, but a violation of its medication policies as well.

## CONCLUSION

For all the above reasons, Woodlands respectfully requests that the Court grant its Motion in Limine to Exclude Certain Comparative Evidence and preclude Plaintiff from introducing at trial comparative evidence concerning employee discipline issued by Woodlands related to so-called "no-call, no-show" events.

11176364.2

Dated at Portland, Maine this 18th day of November, 2016.


/s/ Michael G. Messerschmidt
/s/ Kevin J. Haskins
Michael G. Messerschmidt, Esq.
Kevin J. Haskins, Esq.

*Attorneys for Defendant Woodlands Senior
Living of Brewer, LLC*

Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
mmesserschmidt@preti.com
khaskins@preti.com

7

## CERTIFICATE OF SERVICE

I, Kevin J. Haskins, attorney for Defendant Woodlands Senior Living of Brewer, LLC, hereby certify that I electronically filed Defendant's Motion in Limine to Exclude Certain Comparative Evidence with the Clerk of Court and that service has been made on all those registered to receive service through the Court's ECF system in this matter.

Dated:  November 18, 2016

*/s/ Kevin J. Haskins*
Kevin J. Haskins

Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
khaskins@preti.com

11176364.2