UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHRISTY DORR,

     Plaintiff,

       v.                                  Civil No. 1:15-cv-92-JCN

WOODLANDS SENIOR LIVING OF
BREWER, LLC,

     Defendant.

PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

INDEX

1.  Burden of Proof- Preponderance of the Evidence

2.  Direct and Circumstantial Evidence

3.  Liability of Corporations

4.  Purpose of FMLA

5.  Purpose of ADA

6.  Purpose of the MHRA

7.  FMLA Interference

8.  FMLA Retaliation

9.  Pregnancy Discrimination

10. Failure to Accommodate

11. Disability Discrimination

12. Damages

13. Back Pay

14. Compensatory Damages

15. Punitive Damages

Dated: November 30, 2016

/s/ Chad T. Hansen_____
Chad T. Hansen
Attorney for Plaintiff

*Maine Employee Rights Group*
92 Exchange Street
Portland, Maine 04101
23 Water Street
Bangor, Maine 04401
(207) 874-0905
chansen@maineemployeerights.com

CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2016, I electronically filed the
foregoing with the Clerk of the District Court using its CM/ECF system, which then
electronically notified all those registered as CM/ECF participants in this case.

/s/ Chad T. Hansen

1.      <u>BURDEN OF PROOF</u>[1]

The burden of proof in this case is preponderance of the evidence.  What this means is that the party with the burden of proof must produce evidence that, considered in the light of all the facts, leads you to believe that what they claim is more likely true than not. To put it differently, if you were to put each party's evidence on opposite sides of a scale, the party with the burden of proof must make the scale tip slightly towards their side. Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That higher requirement of proof does not apply in this case; therefore, you should put it out of your mind.

In deciding whether any fact has been proven more likely than not, you should consider the testimony of all witnesses, regardless of who presented them, and all exhibits received in evidence, regardless of who produced them.

---

[1] Alexander, *Maine Jury Instruction Manual*, § 7-11 (4th ed. with updates); 4 Schwartz & Pratt, Section 1983 Litigation: Jury Instructions Instruction No. 2.02.1 at 2-4 (2001 supplement) (citation omitted); *Ostrowski v. Atlantic Mutual Ins. Co.,* 968 F.2d 171, 186-87 (2d Cir. 1992) ("In an ordinary civil suit ... words like 'convince' ... should be shunned in a jury charge, and to tell the jury that it must be able to say 'confidently' that the evidence is in the plaintiff's favor seems quite likely to require more than a preponderance. Instead, the court should instruct the jury that it is to conclude that a fact has been proven by a preponderance of the evidence if it 'find[s] that the scales tip, however slightly, in favor of the party with th[e] burden of proof' as to that fact.); Correy Stephenson, *Study offers trial lawyers insights on jurors' thinking,* Lawyers USA Online, October 25, 2010, (nationwide survey of juror attitudes finds that jurors "struggled with the standard of proof in civil cases, with just 28 percent correctly understanding the term. But 53 percent believed 'preponderance' meant jurors need to believe a plaintiff's case beyond a reasonable doubt, and 19 percent thought it meant they had to be 100 percent convinced by the plaintiff's case.").

3

2.        <u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>[2]

There are two kinds of evidence:  direct and circumstantial.   Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is indirect proof, that is, facts or chains of fact from which you can draw the inference, by reason and common sense, that another fact exists, even though the fact has not been proven directly.  You are entitled to consider both kinds of evidence. It is for you to decide how much weight to give to any evidence. Plaintiff is not required to introduce direct evidence to prove their case, but may prove her case entirely or primarily through circumstantial evidence.

---

[2] *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 98 (2003) ("The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'") (citation omitted). *See generally,* 4 Schwartz & Pratt, Section 1983 Litigation: Jury Instructions Instruction No.2.03.1 at 2-7 (2001 supplement) (citations omitted).

3.      LIABILITY OF CORPORATIONS[3]

Woodlands, as a corporation, can act only through its agents and employees. A corporation is responsible for the acts of its agents and employees when they are acting within the scope of their employment.

The fact that Woodlands is a corporation should not affect your decision. All persons are equal before the law, and corporations, whether large or small, are entitled to the same fair and conscientious consideration by you as any other person.

---

[3] *Peasley v. Regis. Corp.*, 13-CV-00430-JDL, Transcript of Proceedings Volume III at 13-26 (ECF. No. 77 at 13-26).

4.      PURPOSE OF THE FMLA[4]

In this case Ms. Dorr has made claims under the Family and Medical Leave Act, which is commonly referred to as the FMLA. The FMLA is a Federal statute that requires some employers to provide employees with job-protected, unpaid leave for certain family and medical reasons. The FMLA also prohibits an employer from firing an employee or interfering with or discriminating against an employee who exercises the rights granted in the Act to a period of unpaid leave.  Ms. Dorr has also made claims under the Maine Family Medical Leave law which is a Maine state law that provides the same protections as the FMLA.

In passing the FMLA in 1993, Congress found that the number of single-parent households and two-parent households in which the single parent or both parents work was increasing significantly. Congress found that the lack of employment policies to accommodate working parents could force individuals to choose between job security and parenting. Congress also found that due to the nature of the roles of men and women in our society, the primary responsibility for family caretaking often fell on women, and such responsibility affects the working lives of women more than it affects the working lives of men.  Congress passed the FMLA in order to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity and to entitle employees to take job-protected unpaid leave for the employee's serious health condition, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition.

---

[4] 29 U.S.C. §2601; see *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979) (under discrimination laws, it would be useful to discuss with the jury policies underlying law and plaintiff's rights thereunder).

5.      PURPOSE OF THE ADA[5]

In 1990 when it passed the Americans with Disabilities Act ("ADA"),
Congress found that 43 million Americans suffer from one or more physical or
mental disabilities and that historically such individuals had been subjected to
discrimination in critical areas such as employment. Congress further concluded that
such discrimination was costing the United States billions of dollars in unnecessary
expenses resulting from the dependency and nonproductivity of people with
disabilities who are able to work and want to work. Accordingly, Congress found that
the proper goal for our Nation is to assure that individuals with disabilities have the
opportunity to attain economic self-sufficiency by eliminating discrimination in
employment against them.

---

[5] 42 U.S.C. § 12101; see *Loeb*, 600 F.2d at 1003.

6.      <u>PURPOSE OF THE MHRA</u>[6]

It is also the policy of the State of Maine as expressed in the Maine Human Rights Act ("MHRA") to prohibit discrimination in employment on the basis of disability and sex in order to ensure that all individuals have the basic human right to a life with dignity.

---

[6] 5 M.R.S. §4552; see *Loeb*, 600 F.2d at 1003.

7.    <u>FMLA INTERFERENCE</u>

In this case, Ms. Dorr claims that Woodlands unlawfully interfered with her right to take unpaid FMLA leave on June 26, 2014 by terminating her rather than protecting her job and permitting her to return to work. Woodlands denies that Ms. Dorr was entitled to protected leave on June 26, 2014.

To prevail on her FMLA Interference claim, Ms. Dorr must prove all of the following by a preponderance of the evidence:

First: that Ms. Dorr was incapacitated from working on June 26, 2014 due to a "serious health condition." I will provide more detail about how the law defines a serious health condition shortly.

Second: that Ms. Dorr gave appropriate notice of her need to be absent from work. I will also provide more detail about what the law requires for notice shortly.

Third: that Woodlands interfered with the exercise of Ms. Dorr's right to unpaid leave by terminating Ms. Dorr rather than providing her with protected leave and permitting her to return to work. [7]

The FMLA also has threshold eligibility requirements including that the employer have over 50 employees, that the employee worked more than 1,250 hours in the year prior to the requested leave, and that the employee has worked for the employer for more than twelve months. The parties have agreed that these requirements are met.

You do not need to find that Woodlands intentionally interfered with Dorr's right to unpaid leave. For Ms. Dorr's Interference claim, the question is not whether

---

[7] 29 U.S.C. §2612(a)(1)(D).

Woodlands acted with bad intent, but rather whether Dorr was entitled to a leave and Woodlands interfered with the exercise of that leave.[8]

Serious Health Condition. The FMLA defines serious health condition to include situations where a woman becomes temporarily unable to work due to pregnancy.[9] The FMLA also defines serious health condition to include chronic conditions.[10] A chronic condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (*e.g.,* asthma, diabetes, epilepsy, *etc.*).[11]

Absences attributable to incapacity due to pregnancy or a chronic condition qualify for FMLA leave even though the employee does not receive treatment from a

---

[8] *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir. 1998)("These rights are essentially prescriptive, setting substantive floors for conduct by employers, and creating "entitlements" for employees. As to these rights, therefore, the employee need not show that the employer treated other employees less favorably, and an employer may not defend its interference with the FMLA's substantive rights on the ground that it treats all employees equally poorly without discriminating. In such cases, the employer's subjective intent is not relevant. The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave. Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer")(internal citations omitted).

[9] 29 C.F.R. §825.115(b); 29 C.F.R. §825.120(a)(4).

[10] 29 C.F.R. §825.115(c).

[11] 29 C.F.R. §825.115(c).

health care provider during the absence and even if the absence lasts less than three consecutive days.[12]

Appropriate Notice. Under the FMLA, if Ms. Dorr could not foresee the need for leave in advance, appropriate notice means that Ms. Dorr notified Woodlands as soon as practicable after she learned of her need for leave, taking into account all of the facts and circumstances of the individual case.[13] Ms. Dorr was required to timely notify Woodlands of the need for leave, but was not required to specify that the leave was sought under the FMLA, nor was Ms. Dorr required to mention that Act.[14] Nor was Ms. Dorr required to provide the exact dates or duration of the leave requested. The critical question for determining "appropriate notice" is whether the information given to Woodlands was sufficient to reasonably apprise it of Ms. Dorr's request to take time off for a serious health condition. If Ms. Dorr gave Woodlands adequate notice, then Woodlands was required to obtain any additional information it needed, including additional medical information, through informal requests to Ms. Dorr.[15] Under the FMLA the consequence for failing to notify one's employer of a need for leave is soon as is practicable is that the employer need not consider the employee's rights under the FMLA until the notice is given.[16]

---

[12] 29 C.F.R. §825.115(f); 29 C.F.R. §825.120(a)(4)

[13] 29 C.F.R. §825.303(a) & (b).

[14] 29 C.F.R. §825.303(b).

[15] 29 C.F.R. §825.303(b); *Davis v. Walpole Woodworkers, Inc.*, 2006 WL 5255465, at *Fn. 3 (Me. Super. 2006) *citing to Wheeler v. Pioneer Developmental Services, Inc.,* 349 F.Supp.2d 158, 166 (D.Mass. 2004).

[16] 29 C.F.R. §825.304(e); 29 C.F.R. §825.303(a)("For example, if an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment. However, if the child's asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.")

8.    <u>FMLA RETALIATION</u>

In this case, Ms. Dorr also claims that Woodlands violated state and federal law by retaliating against her in violation of the FMLA.[17] To succeed on this claim, Ms. Dorr must prove by the following by a preponderance of the evidence:

First: that Dorr was incapacitated from working on June 26, 2014 due to a "serious health condition."

Second, that Dorr gave appropriate notice of her need to be absent from work.

Third, that Dorr's need to be absent from work was considered as a negative factor in her termination.[18]

Ms. Dorr need not show that her request for or use of leave protected by the FMLA was the only or primary factor in her termination. In fact, you may decide that other factors were involved as well in Woodlands' decision making process. If you decide that her request for or use of leave covered by the FMLA was a factor in the decision to terminate her employment, then you should find for Ms. Dorr.

Ms. Dorr is not required to produce direct evidence of unlawful motive.  You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence-for example, the timing of Ms. Dorr's termination relative to her request for and use of FMLA leave; whether Woodlands treated Ms. Dorr differently than similarly situated employees who did not request or use FMLA leave;

---

[17]   District of Maine Pattern Jury Instructions for Cases of Employment Discrimination § 1.1 and § 5.1 [Updated 10/6/08].

[18] 29 C.F.R. § 825.220(c); *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 159-160 (1st Cir. 1998); *Chase v. United States Postal Serv.,* 149 F. Supp. 3d 195, 209 (D. Mass. 2016)("Compelled as I am to decide, in the absence of controlling authority, which standard the First Circuit would apply if it confronted the issue, I conclude that *Chevron* deference is owed to the Department of Labor's regulations. Those regulations require me to find that Chase need only show that his protected taking of leave was a negative factor in his termination, not that it was a but-for cause of his termination.")

failure by Woodlands to follow its own policies; and explanations that you find were really pretextual.  "Pretextual" means false or, though true, not the real reason for the action taken.[19]

  If you find that the corporate manager who made the decision to terminate Ms. Dorr had no discriminatory motive, but you also find that a lower-level manager had an unlawful discriminatory motive and provided false information to, or concealed relevant information from, the decision-maker while intending to cause Ms. Dorr to be terminated, you may find for Ms. Dorr on her claim of unlawful discrimination if the lower level manager's actions were a substantial factor motivating her dismissal.

---

[19] Pattern Jury Instructions for Cases of Employment Discrimination for the District Courts of the United States Court of Appeals for the First Circuit: §1.1 General Discrimination: Pretext [Updated: 8/24/11]- at http://www.med.uscourts.gov/pdf/empl_discr_pi.pdf.

9.   <u>PREGNANCY DISCRIMINATION</u>[20]

Ms. Dorr accuses Woodlands of pregnancy discrimination in violation of the federal Civil Rights Act and the Maine Human Rights Act. Specifically, she claims that Woodlands terminated her because of her pregnancy and medical conditions related to pregnancy.

Under federal and state law, employers must treat women who are pregnant and who have medical conditions related to pregnancy the same, for all employment-related purposes, as other persons not affected by pregnancy but similar in their ability or inability to work. Pregnancy discrimination includes discrimination against an employee because of pregnancy-related medical conditions.[21]

To succeed on her discrimination claim, Ms. Dorr must prove by a preponderance of the evidence all of the following:

First, that Ms. Dorr was pregnant;

Second, that Woodlands was aware that Ms. Dorr was pregnant;

Third, that were it not for Ms. Dorr's pregnancy and/or medical conditions related to her pregnancy, that Woodlands would not have terminated her.

Ms. Dorr need not show that pregnancy discrimination was the only or predominant factor that motivated Woodlands. In fact, you may decide that other factors were involved as well in Woodlands' decision making process. In that event, in order for you to find for Ms. Dorr, you must find that she has proven by a preponderance of the evidence that, although there were other factors, she would not have been terminated without the pregnancy discrimination.

---

[20] Pattern Jury Instructions for Cases of Employment Discrimination for the District Courts of the United States Court of Appeals for the First Circuit: § 1.1 General Discrimination: Pretext [Updated: 8/24/11]- at http://www.med.uscourts.gov/pdf/empl_discr_pi.pdf.

[21] 42 U.S.C. § 2000e(k); 5 M.R.S. § 4572-A.

An employer is free to terminate an employee for any nondiscriminatory reason even if its business judgment seems objectively unwise. But you may consider the believability of an explanation in determining whether it is a cover-up or pretext for discrimination. In order to find for Ms. Dorr on the discrimination claim, Ms. Dorr must persuade you, by a preponderance of the evidence that were it not for disability discrimination, Ms. Dorr would not have been terminated.

If you find that the corporate manager who made the decision to terminate Ms. Dorr had no discriminatory motive, but you also find that a lower-level manager had an unlawful discriminatory motive and provided false information to, or concealed relevant information from, the decision-maker while intending to cause Ms. Dorr to be terminated, you may find for Ms. Dorr on her claim of unlawful discrimination if the lower level manager's actions were a substantial factor motivating her dismissal.[22]

Ms. Dorr is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence—for example, whether Woodlands treated Ms. Dorr differently than similarly situated employees who were not pregnant, failure by Woodlands to follow its own policies, and explanations that you find were really pretextual.  "Pretextual" means false or, though true, not the real reason for the action taken**.**

---

[22] *Harlow v. Potter,* 353 F.Supp.2d 109, 118 (D. Me. 2005) citing to *Cariglia v. Hertz Equipment Rental Corp.***,** 363 F.3d 77 (1st Cir. 2004)(an employment decision can be "'impermissibly tainted' with a subordinate's animus, if the subordinate concealed relevant information or fed false information to the neutral decision makers." *See also Staub v. Proctor Hosp.***,** 131 S.Ct. 1186 (2011).

10.    FAILURE TO ACCOMMODATE[23]

Federal and state laws require employers to provide reasonable accommodation to employees who have pregnancy related medical conditions unless the accommodation would impose an undue hardship on the employer.[24]

To succeed on a claim that Woodlands has failed to provide a reasonable accommodation for her pregnancy related medical condition, Ms. Dorr must prove:

First, that the proposed accommodation would enable her to perform the essential functions of the job and that the accommodation is feasible for Woodlands under the circumstances; and

Second, that Ms. Dorr made a request for the accommodation that was sufficiently direct and specific so as to put Woodlands on notice of the need for an accommodation. A request for reasonable accommodation need not mention the Civil Rights Act or the Maine Human Rights Act. An employee need only make clear to the employer that the employee wants assistance for her disability. For example, a request for continued employment may be a sufficient request for accommodation if it puts the employer on notice of the employee's request for assistance for her disability.[25]

---

[23] Pattern Jury Instructions for Cases of Employment Discrimination for the District Courts of the United States Court of Appeals for the First Circuit- § 3.2 Reasonable Accommodation [Updated: 9/18/09]- at http://www.med.uscourts.gov/pdf/empl_discr_pi.pdf.

[24] 42 U.S.C.  § 2000e(k); 5 M.R.S. § 4572-A(3)

[25] *Fjellstad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 955 fn.5 (8th Cir. 1999); *Taylor v. Phoenixville School Dist.,* 174 F.3d 142, 159 (3rd Cir. 1999) (holding that a request for reasonable accommodation need not mention the ADA or use the phrase "reasonable accommodation" or other "magic words." Rather an employee need only make clear to the employer that the employee wants assistance for her disability.); *see also Schmidt v. Safeway Inc.,* 864 F. Supp. 991, 997 (D. Or. 1994) ("statute does not require the plaintiff to speak any magic words. . . The employee need not mention the ADA or even the term 'accommodation.'"). *See also Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685, 694 (7th Cir. 1998) ("[a] request as straightforward as asking for continued employment is a sufficient

If Ms. Dorr meets this burden, then Woodlands bears the burden of proving that the accommodation proposed would have been an undue hardship. Ms. Dorr need not show that Woodlands had discriminatory intent or animus towards her disability.[26]

A reasonable accommodation is a modification or adjustment to the work environment or to the manner in which a job is performed. A reasonable accommodation may include things such as modifying an employer's policies and providing an employee with additional leave beyond that allowed by the employer's leave policy.[27] It may also be reasonable for an employer to provide additional leave beyond what is required by other laws such as the Family Medical Leave Act.[28]  A

request for accommodation"). *See also Miller v. Illinois Dep't of Corrections*, 107 F.3d 483, 486–87 (7th Cir. 1997) ("Even if an employee who as here becomes disabled while employed just says to the employer, 'I want to keep working for you—do you have any suggestions?' the employer has a duty under the Act to ascertain whether he has some job that the employee might be able to fill.")

[26] *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir.1999) (explaining that a failure to accommodate claim does not require a showing of a discriminatory animus and that "any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability' "); *also see Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 256-57 (1st Cir. 2000) (a failure to accommodate claim, "does not require that an employer's action be motivated by a discriminatory animus directed at the disability".)

[27] 5 M.R.S. § 4553(9-A); 42. U.S.C. § 12111(9)(B) (duty to accommodate includes obligation to make "appropriate adjustment or modifications to …policies."); 29 C.F.R. Sec. 1630.2(o)(2)(ii)("reasonable accommodation may include but is not limited to…modification…of policies.")

[28] Additional leave beyond that allowed by the employer's leave policy is cited by Pattern Jury Instructions for Cases of Employment Discrimination for the District Courts of the United States Court of Appeals for the First Circuit 3.2 at Fn. 9 in a list of examples of specific kinds of accommodation which may be included in the list of potential reasonable accommodation to be used in the jury instruction, the Instructions cite to *Garcia-Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 646 (1st Cir. 2000) (ADA) in support; *see also Criado v. IBM Corp.,* 145 F.3d 437, 443 (1st Cir. 1998)(holding that "a leave of absence and leave extensions are reasonable accommodations in some circumstances"). *Ralph v. Lucent Techs.,* 135 F.3d 166, 172 (1st Cir. 1998)(holding that a four week extension to a 52 week leave was a reasonable accommodation"); *Criado,* 145 F.3d. at 445 (holding that a leave in excess of 52 weeks could be a reasonable accommodation.); The Equal Employment Opportunity Commission Fact Sheet: *The Family and Medical Leave Act, the*

reasonable accommodation does not include changing or eliminating any essential function of a job, shifting any of the essential functions of the job to others, or creating a new position for the disabled employee. The duty to provide reasonable accommodation is a continuing one and so may require more than one effort in order to ensure that the accommodation is effective. An employer's duty to provide reasonable accommodation also requires the employer to reinstate an employee if the employee's termination was due to a communication mistake and information provided after the termination supports the accommodation of ongoing employment.[29]

An "undue hardship" is an action that would create significant difficulty or expense for Woodlands considering the nature and cost of the accommodation, the overall financial resources of Woodlands, the effect of the accommodation on expenses and resources, and the impact of the accommodation on the operations of Woodlands, including the impact on the ability of other employees to perform their duties and the impact on Woodlands ability to conduct business.[30]

---

*Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964* (http://www.eeoc.gov/policy/docs/fmlaada.html), Q&A No. 12:

Q:   Does the FMLA's limit of 12 workweeks of leave in 12- month period mean that the ADA also limit employees to 12 weeks of leave per year?

A:   No.  The FMLA does not mean that more than 12 weeks of unpaid leave automatically imposes an undue hardship for purposes of the ADA.  An otherwise qualified individual with a disability is entitled to more than 12 weeks of unpaid leave as a reasonable accommodation if the additional leave would not impose an undue hardship on the operation of the employer's business.  To evaluate whether additional leave would impose an undue hardship, the employer  may consider the impact on its operations caused by the employee's initial 12-week absence, along with the undue hardship factors specified in the ADA.  See 29 C.F.R. § 1630.2(p).

[29] *Criado,* 145 F.3d at 444 ("If the termination was the result of a communication mistake Criado should have been reinstated once her physician explained her condition and prognosis and asked for additional leave. See *Bultemeyer v. Fort Wayne Community Sch.*, 100 F.3d 1281 at 1286 (7th Cir. 1996) (holding that although physician's letter requesting an accommodation for disabled employee came after employer's decision to terminate, employer should have 'reconsider [ed] the decision to terminate his employment')").

[30] 5 M.R.S. § 4553(9-B).

18

11.   <u>DISABILITY DISCRIMINATION</u>[31]

Ms. Dorr claims that Woodlands violated the ADA and another federal law called the Rehabilitation Act by terminating her because of disability. To succeed on her discrimination claim, Ms. Dorr must prove by a preponderance of the evidence all of the following:

First, that Ms. Dorr was regarded as having a physical or mental impairment.[32]

Second, Ms. Dorr was a qualified individual, which means she possessed the necessary skill, experience, education and other job-related requirements for her job as a CRMA.

Third, that were it not for Ms. Dorr's impairment, Woodlands would not have terminated her.

A physical impairment is any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.[33]

A mental impairment is any mental or psychological disorder, such as an intellectual **disability** (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.[34]

---

[31] Pattern Jury Instructions for Cases of Employment Discrimination for the District Courts of the United States Court of Appeals for the First Circuit: §3.1 Disability Discrimination [Updated: 3/01/11]- at http://www.med.uscourts.gov/pdf/empl_discr_pi.pdf.

[32] 42 U.S.C. § 12102(3).

[33] 29 C.F.R. § 1630.2(h).

[34] 29 C.F.R. § 1630.2(h).

Disability discrimination includes the termination of a qualified individual for the symptoms of their disability, such as their unavailability for work, if the employee proves by a preponderance of the evidence that at the time of the termination the employer was aware that the symptoms in question were the result of the employee's underlying disability.[35]

Ms. Dorr need not show that disability discrimination was the only or predominant factor that motivated Woodlands. In fact, you may decide that other factors were involved as well in Woodland's decision making process. In that event, in order for you to find for Ms. Dorr, you must find that she has proven that, although there were other factors, she would not have been terminated without the disability discrimination.

An employer is free to terminate an employee for any nondiscriminatory reason even if its business judgment seems objectively unwise. But you may consider the believability of the employer's explanation in determining whether it is a cover-up or pretext for discrimination. In order to find for Ms. Dorr on the discrimination claim, Ms. Dorr must persuade you, by a preponderance of the evidence, that were it not for disability discrimination, she would not have been terminated.

If you find that the corporate manager who made the decision to terminate Ms. Dorr had no discriminatory motive, but you also find that a lower-level manager had an unlawful discriminatory motive and provided false information to, or concealed relevant information from, the decision-maker while intending to cause Ms. Dorr to

---

[35] *Criado v. IBM Corp.,* 145 F.3d 437, 444-445 (1st Cir. 1998).

be terminated, you may find for Ms. Dorr on her claim of unlawful discrimination if the lower level manager's actions were a substantial factor motivating her dismissal.[36]

Ms. Dorr is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other evidence—for example, the timing of Ms. Dorr's termination relative to her request for and use of FMLA leave; whether Woodlands treated Ms. Dorr differently than similarly situated employees who did not request or use FMLA leave; failure by Woodlands to follow its own policies; and explanations that you find were really pretextual.  "Pretextual" means false or, though true, not the real reason for the action taken.

---

[36] *Harlow v. Potter,* 353 F.Supp.2d 109, 118 (D. Me. 2005) citing to *Cariglia v. Hertz Equipment Rental Corp.*, 363 F.3d 77 (1st Cir. 2004)(an employment decision can be "'impermissibly tainted' with a subordinate's animus, if the subordinate concealed relevant information or fed false information to the neutral decision makers." *See also Staub v. Proctor Hosp.*, 131 S.Ct. 1186 (2011).

12.    <u>DAMAGES</u>

If you find that Woodlands unlawfully violated Ms. Dorr's rights by interfering with her FMLA rights, retaliating against her for use of FMLA, pregnancy discrimination, failure to accommodate, or disability discrimination as explained above, then you must determine the amount of damages, if any, that Ms. Dorr has sustained.

Ms. Dorr is entitled to seek back pay, compensatory damages, and punitive damages against the Defendant.

13.  BACK PAY

If you find Woodlands unlawfully violated Ms. Dorr's rights by interfering with her FMLA rights, retaliating against her for use of FMLA, pregnancy discrimination, failure to accommodate, or disability discrimination as explained above, you must award back pay damages equal to the value of salary and benefits she would have received from the Woodlands from the date she would have resumed work but for her termination to the present minus the value of salary and benefits actually received by Plaintiff to the present.[37]

Any ambiguity in what the Ms. Dorr would have received but for Woodlands' unlawful conduct should be resolved against Woodlands.[38] If you find that it is impossible to reconstruct the amount that Ms. Dorr would have earned but for the

---

[37] *Lussier v. Runyon,* 50 F.3d 1103, 1109 n.7 (1st Cir. 1995)(holding that "back pay is a presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination case."); *Albemarle Paper Co. v. Moody,* 422 U.S. 405,421-422 (1975) (holding that there is "little room for the exercise of discretion not to award a reimbursement" of back pay in an employment discrimination case); *City of Los Angeles v. Manhart,* 435 U.S. 702,719 (1978) (holding that the presumption in favor of back pay in an employment discrimination case "can seldom be overcome"); *Doll v. Brown,* 75 F. 3d 1200, 1202 (7th Cir. 1996) (per Chief Judge Posner) ("If the plaintiff succeeds in proving that the employer violated the law, the latter can avoid having to pay damages or to provide other relief to the plaintiff only by proving that the plaintiff was not made worse off by the violation.")

[38] *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 627-628 (6ᵗʰ Cir. 1983)("any ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer.") citing to *Detroit Edison,* 515 F.2d at 315; *Kaplan v. Theatrical Employees Local 659,* 525 F.2d 1354, 1362–63 (9th Cir.1975); *Pettway,* 494 F.2d at 260–61; *Stewart,* 542 F.2d at 452; *Bowe,* 489 F.2d 896, 902; *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364, 1380 (5th Cir.1974); *Kallir, Philips, Ross, Inc.,* 420 F.Supp. at 923; *NLRB v. Coca-Cola Bottling Co.,* 360 F.2d 569, 573 (5th Cir.1966); *Croushorn v. Board of Trustees of Univ. of Tennessee,* 518 F.Supp. 9, 27 n. 16 (M.D. Tenn.1980); *also see Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 156 (3d Cir. 1999) (holding that "uncertainties [in the calculation of back pay] are resolved against a discriminating employer"). See also *Wooldridge v. Marlene Indus. Corp.,* 875 F.2d 540, 549 (6th Cir.1989)(internal citations omitted)("Backpay should be awarded even where the precise amount of the award cannot be determined, with any ambiguities being resolved against the discriminating employer. Where it is impossible to reconstruct the employment history of each claimant, back pay equal to the maximum amount which could have been earned but for the discrimination is appropriate.")

unlawful conduct, back pay equal to the maximum amount which could have been earned but for the unlawful conduct is appropriate.

14.    <u>COMPENSATORY DAMAGES</u>[39]

If you find for Ms. Dorr on her claims of pregnancy discrimination or disability discrimination, she is also entitled to recover damages in an amount that will reasonably compensate her for the loss and injury suffered as a result of the unlawful conduct. You may award Ms. Dorr reasonable compensation for the following:

1.    loss of enjoyment of life; that is, loss of the ability to enjoy certain aspects of her life as a result of the unlawful actions;

2.    financial distress;

3.    embarrassment and humiliation;

4.    pain, suffering, and physical or emotional distress; and

5.    injury to reputation, including future lost earning ability.

You may consider the testimony and the demeanor of the Ms. Dorr in considering and determining a fair allowance for any compensatory damages. No opinion of any witness is required as to the amount of such reasonable compensation.

---

[39] *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) (citations omitted) ("compensatory damages may include not only out-of-pocket  loss and other monetary harms, but also such injuries as impairment of reputation **...** , personal humiliation, and mental anguish and suffering"). See also *Hogan v. Bangor & Aroostook Railroad Co.,* 61 F.3d 1034, 1037 (1st Cir. 1995) (compensatory damages in employment discrimination case may be awarded by jury "not only for emotional distress, but also for inconvenience, mental anguish and loss of enjoyment of life" and affirming award of $200,000 in intangible compensatory damages based in part on evidence of "a difficult financial situation"); *E.E.O.C. Policy Guidance No. 915.002 on Compensatory and Punitive Damages Under 1991 Civil Rights Act* (B.N.A., 1992) at II(A)(2); *Stallworth v. Shuler,* 777 F.2d 1431 (11th Cir. 1985); Civil Rights Act of 1991, §§ 1977A(b)(2) and 1977A(b)(3), 42 U.S.C. §§ 1981a(b)(2) and 1981a(b)(3) (allowing compensatory damages under Title VII for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses"); 3 Devitt, Blackmar & Wolf, *Federal Jury Practice and Instructions,* § 104.06 (4th Ed. 1987).

25

No evidence of the monetary value of intangible injuries like loss of enjoyment of life, humiliation, embarrassment, financial distress, injury to reputation, mental anguish, and other non-monetary injuries is available and there is no standard I can give you for fixing any compensation to be awarded for these injuries. Even though it is obviously difficult to establish a standard measurement for these damages, that difficulty should not stop you from awarding a recovery on this element of damages. You must, therefore, make the best and most reasonable estimate you can, not from a personal point of view, but from a fair and impartial point of view. And you must place a money value on this, attempting to come to a conclusion that will be fair and just to both of the parties. This will be difficult for you to measure in terms of dollars and cents, but there is no other rule I can give you in assessing this element of damages.

15.   PUNITIVE DAMAGES[40]

If you find in favor of Ms. Dorr on her claims of pregnancy discrimination or disability discrimination in addition to compensatory damages, the law allows, but does not require you, to award punitive damages.

You may award the Ms. Dorr punitive damages if you find, by a preponderance of the evidence, that the acts or omissions of the Woodlands were done maliciously or with reckless indifference to the protected rights of the Plaintiff. An act or failure to act is maliciously done if it is prompted by ill will or spite towards Ms. Dorr.  An act or failure to act is done with reckless indifference if Woodlands knew or should have known that Ms. Dorr's rights would be violated by its actions or omissions.

In making this decision, you should consider the underlying purpose of punitive damages.  Punitive damages are awarded in the jury's discretion to punish a defendant for acting with malice or with reckless indifference to a plaintiff's rights or to deter it and others like it from similar conduct in the future.  Thus, in deciding whether to award punitive damages, you should consider whether Woodlands may be adequately punished by an award of compensatory damages only, or whether the conduct is so malicious or reckless that compensatory damages are inadequate to punish the wrongful conduct.  You should also consider whether compensatory damages standing alone are likely to deter or prevent Woodlands from again performing any wrongful acts it may have performed, or whether punitive damages are necessary to provide deterrence against others.  Finally, you should consider

---

[40] *Kolstad v. American Dental Association*, 527 U.S. 526 (1999).

whether punitive damages are likely to deter or prevent other persons or corporations

from performing wrongful acts similar to those Woodlands may have committed.